IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:22-CV-00077-KDB-DCK

| | |
|---|---|
| STEPHANIE SPEAKS, | |
| Plaintiff, | |
| v. | **ORDER** |
| HEALTH SYSTEMS MANAGEMENT, INC., | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant Health Systems Management, Inc.'s ("Heath Systems" or the "Company") Motion to Dismiss the employment discrimination claims of its former employee Stephanie Speaks. Ms. Speaks claims that she was unlawfully terminated in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq* ("ADA"), when she refused to comply with the Company's COVID-19 vaccination policy. (Doc. No. 8). For the reasons discussed below, the Court will **GRANT** the motion.

At the outset, however, it is important to note the narrowness of the issue before the Court. Since early 2020, the world has battled COVID-19, the disease caused by the infectious SARS-CoV-2 coronavirus. According to the Johns Hopkins University of Medicine, there have been over 580 million cases of COVID-19 worldwide, with more than 92 million cases in the United States. The death toll from the disease is equally staggering - COVID-19 has killed over 6 million people worldwide, including over a million people in the United States. *See* Johns Hopkins University COVID-19 Dashboard, https://coronavirus.jhu.edu/map.html, accessed August 10,

1

2022. The disease continues to be a public health challenge, albeit with fewer serious illnesses and deaths than when it first spread.

Among the reasons for the amelioration of the worst effects of this global pandemic is the creation and broad administration of more than 12 billion doses of vaccines that, while certainly not a panacea nor a complete shield against the disease, "work well to help prevent severe coronavirus disease, hospitalization or death." *Id.*; Lisa Maragakis, M.D. and Gabor Kelen, M.D., *Full FDA Approval of a COVID-19 Vaccine: What You Should Know*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/full-fda-approval-of-a-covid-19-vaccine-what-you-should-know. The advent of these life-saving vaccines has led some schools, government agencies and private businesses to require that their employees, students and customers become vaccinated. These "vaccine mandates" raise a host of important and complex legal issues that force courts to balance the competing constitutional, statutory and common law rights of public and private employers, employees, students, parents and others, often with each group containing those who both support and oppose the vaccination requirement.

The full scope of these challenging issues is not before the Court. Instead, the Court need only address the narrow issue of whether Ms. Speaks, who is appearing *pro se*, may maintain her ADA claims against the Company. As explained below, because the Court finds that she has not sufficiently alleged that she has a disability within the meaning of the ADA simply because her employer implemented a COVID-19 policy requiring vaccination and she chose not to become vaccinated or seek an exemption, the Court concludes her claims must be dismissed.

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually

2

sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). A complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009).

Further, a court is not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *see also Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 984 n.1 (D. Md. 2002) ("When the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail") (citing *Fayetteville Investors v. Commercial Builders, Inc*., 936 F.2d 1462, 1465 (4th Cir. 1991)); *Sec'y of State for Defense v. Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Finally, in applying these Rule 12 standards the Court must also consider that Plaintiff is proceeding *pro se*, which requires the Court to liberally construe the pleadings. *See Erickson v. Pardus*, 551 U.S. 89 (2007). Pro se pleadings are held to a less stringent standard than those drafted by attorneys, and if the Court can reasonably read the pleadings to state a valid claim on which the

3

plaintiff could prevail, it should do so. *Estelle v. Gamble*, 429 U.S. 97 (1976), *Hughes v. Rowe*, 449 U.S. 5 (1980). However, a district court may not rewrite a *pro se* complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Still, the requirement of liberal construction of *pro se* pleadings does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Iqbal*, 556 U.S. at 678.

## II.   FACTS AND PROCEDURAL HISTORY

Health Systems is in the business of providing management and administrative services for dialysis facilities in Georgia and North Carolina. Speaks is a resident of Statesville, North Carolina and a former employee of Health Systems Management North Carolina, one of the Company's subsidiaries. She worked with patients as a financial counselor in a Statesville outpatient dialysis facility, which operated under what was at the time the Wake Forest Baptist Health System.

In July 2021, Health Systems instituted a mandatory COVID-19 vaccination policy. In enacting the policy, the Company told its employees that it did so because (1) it was required by the Wake Forest Baptist Health System (Doc. No. 1 at pp. 44-45; Ex. A-14), and (2) "[a]s healthcare workers, we know that it is our sacred duty to keep those in our care safe and protected." (Doc. No. 1 at p. 27; Ex. A-1.) The policy, which contained an opportunity for employees to seek a medical or religious exemption, required vaccination by October 31, 2021. *Id*. On July 29, 2021, Ms. Speaks signed an acknowledgment that she had received and understood the vaccination policy, (Doc. 1 p. 31; Ex. A-4), although she claims that she soon thereafter expressed her disagreement with the vaccination requirement.

4

Prior to the vaccination deadline date, the Company held educational seminars, informed its employees that the Pfizer vaccine had been fully approved by the FDA, and offered a financial incentive of $500.00 to vaccinated employees. (Doc. No. 1; Speaks Aff. ¶¶ 16; 19-21.) Plaintiff admits that she did not seek a medical or religious exemption but rather asserted a "right of informed consent and the right to refuse to take part in clinical trials," even though by the vaccination deadline the Pfizer vaccine had moved beyond emergency use approval. (Compl. ¶ 46.) On October 29, 2021, the Company sent Speaks a letter reminding her of the vaccination policy and exemption request/approval deadline of October 31, 2021, and told her that if she remained unvaccinated that she would be placed on a two-week unpaid leave of absence starting on Monday, November 1, 2021. (Doc. No. 1, Speaks Aff. ¶ 37.) She was also informed that her employment would be terminated on November 14, 2021, if she remained unvaccinated. *Id*. Speaks chose to remain unvaccinated and not seek an exemption and she was terminated on or about November 14, 2021.

Before filing this lawsuit, Speaks filed charges of disability discrimination and retaliation with the Civil Rights Division of the North Carolina Office of Administrative Hearings ("NCOAH") in September 2021, (Doc. 1 pp. 41-42; Ex. A-12), and with the U.S. Equal Employment Opportunity Commission ("EEOC") in February 2022. (Doc. 1 pp. 63-66; Ex. A-28.) On March 10, 2022, the EEOC provided Speaks a "Dismissal and Notice of Right to Sue" letter, (Compl. ¶ 6), which was issued at her request prior to the EEOC conducting an investigation into her charges.[1]

---

[1] There are numerous additional facts related to Speaks' administrative filings, and the Company has asserted as a second ground for dismissal that Speaks allegedly failed to exhaust her administrative remedies because she failed to properly notarize or verify her charges. As noted

5

Case 5:22-cv-00077-KDB-DCK   Document 13   Filed 08/17/22   Page 5 of 13

On June 10, 2022, Speaks filed this action, alleging that the Company violated the ADA by its alleged discrimination and retaliation. Setting aside her most outrageous allegations and invective, including that neither the COVID-19 global pandemic nor a legal vaccine exists,[2] Speaks in effect contends that Health Systems violated the ADA simply by enforcing its COVID-19 policy requiring its employees to be vaccinated. (Doc. No. 1 at ¶¶ 67, 70; Doc. No. 11 at 3). As discussed below, after fully considering the parties' arguments,[3] the Court finds otherwise.

### III. DISCUSSION

The Company asks the Court to dismiss Speaks claims on two grounds. First, it argues that Speaks has failed to sufficiently allege a viable ADA claim for either discrimination or retaliation. Second, it asserts a procedural defense based on its allegation that Speaks failed to exhaust her administrative remedies by failing to properly verify her EEOC charge, which was otherwise

---

below, the Court need not and does not reach this technical procedural argument for dismissal so a full statement of the facts relevant to that defense has been omitted.

[2] The Court has some sympathy for Ms. Speaks having to choose between keeping her job and being vaccinated, and Ms. Speaks was certainly entitled to remain unvaccinated if she chose to do so. However, Ms. Speaks is not entitled to pursue her claims based on a clearly false alternate reality that denies the very existence of the COVID-19 pandemic which has left millions dead or the numerous vaccines which have been approved as safe and effective and administered billions of times. *See E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[the Court] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979) (concluding that, at the motion to dismiss stage, a court need not accept all factual allegations devoid of any reference to actual events). Indeed, the Supreme Court has recognized that "[s]temming the spread of COVID-19 is unquestionably a compelling state interest[.]" *Roman Catholic Diocese of Brooklyn v. Cuomo*, ––– U.S. ––––, 141 S. Ct. 63, 67, 208 L.Ed.2d 206 (U.S. 2020).

[3] In its reply brief, the Company asks the Court not to consider Speaks' responsive memorandum because it was allegedly *four days* late (and mailed only *one day* after the initial deadline). First, the Company is wrong. Speaks' memorandum filed August 8, 2022, was not late because the Court entered an order giving her until August 23, 2022, to file her response. *See* Doc. No. 10. Further, and especially considering her *pro se* appearance, the Court would have readily granted a extension of time of just a few days (even if it had been opposed by the Company as the reply suggests). Therefore, the Court rejects the Company's effort to disallow Ms. Speaks' memorandum in support of her claims, which the Court has fully considered in reaching its ruling.

6

timely and sufficient. Because the Court finds in favor of the Company on its merits arguments, it need not and will not rule on Health System's technical procedural defense.

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370 (4th Cir. 2022). To establish a prima facia case of disability discrimination, a plaintiff must show (i) she was disabled, (ii) she was discharged, (iii) she was fulfilling her employer's legitimate expectations when she was discharged, and (iv) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. *Id.*, citing *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004). If the employee makes this showing, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007). If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation was "actually a pretext for discrimination." *Id.* (citation and internal quotation marks omitted).

Only the first element of Speaks' prima facie case, whether she was disabled within the meaning of the ADA, is contested here. According to the Company, the fact that Speaks – like all their other employees – was required to be vaccinated or that she refused to become vaccinated are insufficient to show that she was disabled under the meaning of the ADA. The Court agrees.

The ADA defines "disability" as either (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). While the ADA directs courts to construe "disability" in "favor of broad coverage of individuals" to the "maximum extent permitted by the terms" of the statute, 42 U.S.C. § 12102(4)(A), to have an actual disability under the ADA, an individual must have "a physical or mental impairment that

7

substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Speaks does not contend that she has an actual disability (although she does contend that she was prevented from working for Health Systems because of its COVID-19 policy).[4] Indeed, she does not allege that she ever contracted COVID-19, which itself may or may not be a disability under the ADA.[5] Rather, she claims that Health Systems made a "record of" her alleged disability by "misclassifying her as having an impairment" and she was "regarded as" having a disability. Doc. No. 11 at 2.

Speaks has not plausibly alleged that she is disabled based on a "record of" a disability. To state a claim for disability discrimination based on a record of a disability, a plaintiff must

---

[4] The application of an employer's COVID-19 policy to a particular employee is not a disability. *See e.g., Roman v. Hertz Loc. Edition Corp.*, No. 20 CV 2462-BEN, 2022 WL 1541865, at * 8 (S.D. Cal. May 16, 2022) (rejecting argument that employer's "COVID-19 policy prevented [plaintiff] from working and therefore transformed her COVID-19 infection into disability," because "an employer's legal treatment of an individual cannot form the basis of [a] finding [of] a disability.").

[5] The Court need not and does not decide under what circumstances COVID-19 may be considered a disability under the ADA, an issue on which Federal courts have reached different conclusions. *Compare Brown v. Roanoke Rehab. & Healthcare Ctr.*, No. 3:21-CV-00590-RAH, 2022 WL 532936, at *5–6 (M.D. Ala. Feb. 22, 2022) (finding that a plaintiff alleging serious COVID-19 related symptoms could maintain an ADA claim) and *Matias v. Terrapin House, Inc.*, 21-cv-02288, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021) (citing agency guidance to conclude that COVID-19 may be an ADA disability as it is not always transitory and is not minor) *with Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1349 (M.D. Ga. 2021) (explaining that to find millions of Americans "disabled" under the ADA would lead to absurd results) and *Baum v. Dunmire Prop. Mgmt., Inc.*, No. 21-CV-00964-CMA-NYW, 2022 WL 889097, at *4 (D. Colo. Mar. 25, 2022) (acute short term 15 day COVID-19 illness resulting in death does not constitute a disability under the ADA); *see also Booth v. GTE Fed. Credit Union*, 21-cv-1509-KKM-JSS, 2021 WL 5416690, at *6 (M.D. Fla. Nov. 20, 2021) (analyzing the lack of consensus regarding whether COVID-19 is a disability under the ADA).

plausibly allege that she has "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2); *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 153 (4th Cir. 2012); *see Shklyar v. Carboline Co.*, No. 4:22 CV 391 RWS, 2022 WL 2867073, at *2–3 (E.D. Mo. July 21, 2022). To survive a motion to dismiss, a plaintiff using this prong must "allege facts or indicate that defendant or any of its employees knew, had records, or had misclassified Plaintiff as having a physical impairment that substantially limits one or more major life activities." *Okyere v. John Bean Tech. Corp.*, No. 5:20-CV-190-FL, 2020 WL 7625237, at * 7 (E.D.N.C. Dec. 22, 2020). The Company did not classify Speaks as having any "impairment" that limited one of her "major life activities." Instead, she was simply required to become vaccinated under the Company's COVID-19 policy applicable to all employees, which, while it ultimately led to Speaks' termination from Health Systems, plainly did not impair her ability to work (for example, for another company).

Simply put, inferring that the Company classified Speaks as impaired by requiring her to become vaccinated or seek an exemption would mean that Health Systems considered all its employees to have an "impairment," which is of course not a plausible inference, particularly in light of the possibility of an exemption. *See Shklyar*, No. 4:22 CV 391 RWS, 2022 WL 2867073, at *4-5 ("[Plaintiff's amended complaint shows that [her employer] classified [plaintiff] in the same way that it classified all of its RD&I employees. Inferring that [the employer] misclassified [plaintiff] as having a disability would therefore require inferring that [the employer] misclassified all of its RD&I employees as having a disability. Such an inference is not reasonable."). Accordingly, Speaks has failed to state a claim for disability discrimination based on a "record of" a disability.

Similarly, Speaks has failed to state a claim for disability discrimination based on having been regarded as having a disability, which requires that a plaintiff plausibly allege that she "'has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 876 (4th Cir. 2020) (quoting 42 U.S.C. § 12102(3)). Again, there is no plausible basis to conclude that Health Systems regarded Speaks as having a "physical or mental impairment." The Company only regarded Speaks as being required – like all of its employees – to obtain a COVID-19 vaccine or be approved for an exemption and then "regarded" her as having failed to do so by the deadline to become vaccinated.[6] Refusing to get a vaccine required by an employer is not itself an "impairment" of any sort. Rather, it reflects a personal *choice* by Speaks that, while hers to make in this context, cannot be considered an impairment under the ADA.[7,8] *See Egelkrout v. Aspirus, Inc.*, No. 22-CV-118-BBC, 2022 WL

---

[6] *See Hice v. Mazzella Lifting Techs., Inc.*, No. 2:21CV281, 2022 WL 636640, at *7–8 (E.D. Va. Mar. 4, 2022) (possible future exposure to COVID-19 does not constitute an impairment under the ADA, citing *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019) in which the Eleventh Circuit concluded that "the disability definition in the ADA does not cover [restrictions on foreign travel because of the risk of the Ebola virus] where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future.").

[7] Speaks specifically disclaims making any allegation that the Company "regarded" her as being especially vulnerable to COVID-19 or likely to develop COVID-19 in the future. Doc. No. 11 at 9. Instead, Speaks claims that she meets the "regarded as" prong because she allegedly gave "notice" to the Company that she was disabled when she informed them that she objected to the vaccination requirement and thus would lose her job if the policy was enforced. Of course, whether or not an employer "regards" an employee as disabled is determined by the view of the employer not the employee. *Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378, 385 (4th Cir. 2008) (where an employee relies on a "regarded as" disabled theory, the focus is "on the reactions and perceptions of the employer's decisionmakers....").

[8] Indeed, "[v]accination requirements are a common feature of the provision of healthcare in America: Healthcare workers around the country are ordinarily required to be vaccinated for diseases such as hepatitis B, influenza, and measles, mumps, and rubella." *Biden v. Missouri*, 142 S. Ct. 647, 653; 211 L. Ed. 2d 433 (2022) (preliminarily upholding a vaccine mandate for health care workers who are employed by organizations receiving federal funding).

2833961, at *3 (W.D. Wis. July 20, 2022) (noting that a similar anti-discrimination statute Title VII does not require an employer to accommodate a "purely personal preference."). Accordingly, Speaks has also not plausibly alleged that the Company regarded her as having a disability.

In sum, because Speaks has not plausibly alleged an actual disability, that Health Systems misclassified her as having a disability nor plausibly alleged that the Company regarded her as having a disability, she has failed to plausibly allege the existence of an essential element of her discrimination claim: that she is disabled within the meaning of the ADA. For this reason, Speaks' discrimination claim fails and will therefore be dismissed.

Speaks' second claim alleging retaliation will similarly be dismissed. The ADA's retaliation provision specifies that "[n]o person shall discriminate against any individual because such individual... made a charge ... under this chapter." 42 U.S.C. §12203(a). "To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) she engaged in protected conduct (2) she suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds,* 701 F.3d at 154. Speaks' retaliation claim fails because, even assuming that Speaks has plausibly alleged that her opposition to the Company's COVID-19 policy was protected ADA activity,[9] she has not plausibly alleged that there was a causal connection between her alleged protected activity and her termination.

---

[9] Protected activity is generally defined as an action that requests an ADA remedy or that challenges a violation of the ADA. *See* 42 U.S.C. 12203(a); *see also Thompson v. City of Charlotte*, 3:17-cv-00600, 2018 WL 5085766, at *3 (W.D.N.C. Oct. 18, 2018) *aff'd* 827 F. App'x 277 (4th Cir. 2020) ("Since the communication did not challenge an infraction of the ADA, it was not considered a protected activity."). While Speaks' memorandum suggests that her "prohibited activity" was not being allowed to "perform[] [her] essential job actions," Doc. No. 11 at 10, and that is not "protected activity" in the context of a retaliation claim, the Court will construe Speaks' *pro se* Complaint liberally to sufficiently allege that she raised ADA concerns about the Company's COVID-19 policy, which would arguably constitute "protected activity."

11

The core of Speaks retaliation claim against Health Systems is that her termination under the Company's COVID-19 policy's vaccination requirement violates the ADA because she repeatedly opposed the policy. However, it is clear that the policy – which was undisputedly the grounds for Speaks' termination when she chose to remain unvaccinated – was enacted *before* Speaks spoke up in opposition to the vaccination requirement. Therefore, it is not reasonable to infer that there was a causal connection between her criticism of the policy and her termination. *See O'Hailpin v. Hawaiian Airlines, Inc.*, No. 22-00007 JAO-KJM, 2022 WL 314155, at *11 (D. Haw. Feb. 2, 2022) ("Plaintiffs are unlikely to establish a prima facie case of retaliation ... because the adverse employment actions ... appear to be unconnected to their RA requests. Indeed, the vaccine policy was established, as well as the consequences for failing to comply[,] ... before Plaintiffs submitted their RA requests."); *Together Emps. v. Mass Gen. Brigham Inc.*, No. 21-11686-FDS, 2021 WL 5234394, at *20 (D. Mass. Nov. 10, 2021) (finding plaintiffs likely could not show a causal connection between protected activity and adverse employment action where defendant asserted that "plaintiffs [were] subject to unpaid leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy"). Accordingly, because Speaks has not plausibly alleged that there was a causal connection between her alleged protected activity and the adverse action taken against her, her retaliation claim fails and must be dismissed. *See Shklyar*, No. 4:22 CV 391 RWS, 2022 WL 2867073, at *5–6.

As noted above, the Court recognizes the harshness of Speaks' choice between a decision not to be vaccinated against COVID-19 and keeping a job that she had held for many years. And the Court is mindful of the difficult choices that had to be made by the Company in balancing the different interests of their corporate partners, patients, and employees (who no doubt both

supported and opposed the vaccine requirement). However, regardless of the wisdom of the Company's COVID-19 policy, which is of course not before the Court, it is clear that Ms. Speaks has failed to state a claim that she was disabled under the ADA. Therefore, this action will be dismissed.

## IV. ORDER

**IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 8) is **GRANTED;** and
2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.


Signed: August 17, 2022

Kenneth D. Bell
United States District Judge